IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**WEYERHAEUSER COMPANY,**
**Employer Below, Petitioner**

**v.) No. 24-ICA-355**      (JCN: 2023015296)

**RICHARD PRITT,**
**Claimant Below, Respondent**

**FILED**
**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Weyerhaeuser Company ("WC") appeals the August 8, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Richard Pritt filed a response.[1] WC filed a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which rejected the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Pritt filed an occupational disease claim, and indicated that his date of last exposure was July 20, 2022.[2] Prior to filing the claim application, on July 23, 2020, Mr. Pritt received an email from Kevin Cochran,[3] indicating that the MDI levels were tested after receiving reports of high levels, and the levels were found to be "in line with what [they] generally see." On July 27, 2020, Mr. Pritt had an email exchange with Steve Cutlip regarding his exposure to methylene diphenyl diisocyanate ("MDI") and formaldehyde in the week prior.[4] Mr. Pritt was informed that the respirator filter that he used while working

---

[1] WC is represented by Richard W. Gallagher, Esq., and Mark J. Grigoraci, Esq. Mr. Pritt is represented by Lucas R. Tanner, Esq.

[2] This claim application was not included in the record below, but this information was noted by the Board. It is unclear when the claim application was filed.

[3] It appears that Mr. Cochran was employed by WC at the time of the email exchange, but his title and responsibilities within the company are not made clear from the record.

[4] It appears that Mr. Cutlip was employed by WC at the time of the email exchange, but his title and responsibilities within the company are not made clear from the record.

with the chemicals was not approved for exposure to those chemicals. Mr. Pritt indicated that post exposure he was shaking all over, he developed burning in his eyes and throat, and weakness in his legs. Mr. Pritt requested that his exposure be documented.

Covestro completed an Industrial Hygiene Evaluation on May 11, 2022, and issued its report on June 9, 2022. Covestro evaluated the WC Sutton OSB facility in Heaters, West Virginia for airborne concentrations of MDI. Forty-two samples were collected during the manufacture of 7/16-inch wall and roof sheathing. All of the samples measured below the American Conference of Governmental Industrial Hygienists Threshold Limit Value - Time Weighted Average of 5 parts per billion ("ppb") for MDI monomer. The results were also below the adjusted Threshold Limit Value of 3.3 ppb for a 12-hour work shift.

On May 2, 2023, Mr. Pritt was evaluated by Syam Stoll, M.D. Mr. Pritt reported several significant occupational exposure incidents including one that occurred in 2021, when WC was having difficulty obtaining respirator cartridges. Mr. Pritt stated that the new storeroom employee mistakenly ordered respirator cartridges that did not protect against MDI and formaldehyde, and Mr. Pritt had unknowingly used the wrong cartridges while blowing down the press and was exposed to chemicals. Mr. Pritt stated that forty-five minutes after the exposure he began to shake badly and developed burning in his eyes, nose, throat, and chest. Mr. Pritt further reported that he took a reading with a handheld MDI dosimeter following that incident and it showed 60 ppb. Mr. Pritt noted that OSHA's recommended permissible exposure limit was 5 ppb. Mr. Pritt reported that he had no breathing issues and felt great after being off work for a week in November, but he subsequently began to experience increased chest tightness a day or two after returning to work. Mr. Pritt also reported developing blisters on his skin and scalp when he works. Dr. Stoll opined that Mr. Pritt's "alleged" occupational disease exposure was based solely upon his subjective complaints; Mr. Pritt's pulmonary function and radioallergosorbent ("RAST") testing did not support a direct causal connection to his work duties and the "alleged" occupational disease; objective medical documentation did not support that Mr. Pritt sustained the alleged occupational disease as a result of being exposed in the course of his employment and job duties; Mr. Pritt had no evidence of an occupational disease; and Mr. Pritt's subjective complaints were due to non-occupational causes.[5]

Marcus Cervantes, M.D., Mr. Pritt's treating physician and an environmental and occupational medicine physician, authored a letter dated October 14, 2023. Dr. Cervantes indicated that Mr. Pritt first presented with complaints of wheezing, a dry cough, chest tightness, and dyspnea. Mr. Pritt reported that his symptoms increased in frequency and

---

[5] Dr. Stoll failed to identify any potential nonoccupational causes of Mr. Pritt's symptoms.

nature based upon the amount of time he spent in the workplace. Mr. Pritt noted that his symptoms would lessen or resolve over weekends, vacations, and other extended periods away from work, and then return shortly after he reentered the workplace. Mr. Pritt reported that he did not have a prior history of asthma. Dr. Cervantes opined that the symptoms were classic for work-related asthma and sensitivity and that Mr. Pritt's initial spirometry findings were consistent with a diagnosis of asthma. Dr. Cervantes noted that MDI is a sensitizing agent that is capable of causing irritant asthma with high dose exposure or chronic, low-level exposures over the course of months or years. Dr. Cervantes opined that, because Mr. Pritt worked for WC for at least twenty years, there was biological plausibility within a reasonable degree of certainty that he could have developed sensitization to either MDI or formaldehyde from his employment.

Dr. Cervantes indicated that although the RAST testing performed for both MDI and formaldehyde was negative, in his clinical experience he found that RAST testing cannot be relied upon for diagnostic purposes. Dr. Cervantes noted that he had seen patients with clear diagnoses of sensitivity and asthma, but who had negative RAST tests. Further, Dr. Cervantes found it plausible that a sensitized worker would have undetectable levels of the offending agent on RAST testing with cessation of exposure. Dr. Cervantes noted that Mr. Pritt reported that he had been moved to the control room since January 2023 where his exposure to MDI and formaldehyde was more sporadic in nature. Thus, Dr. Cervantes opined that Mr. Pritt's RAST testing was consistent with this reported occupational exposure history.

Dr. Cervantes noted that after Mr. Pritt's initial spirometry, which showed significant asthma-like bronchial reactivity, Mr. Pritt was removed from the workplace with a plan to repeat spirometry six to eight weeks later. Dr. Cervantes opined that this is a classic pattern for the diagnosis of occupational asthma, as repeat spirometry performed several weeks after withdrawal from the offending agent should show objective improvement in lung function and volumes. Dr. Cervantes further noted that following removal from the workplace, Mr. Pritt's FEV1/FVC improved to 0.70 and there was also complete resolution of the previously noted bronchial hyperactivity. Dr. Cervantes opined that these findings were consistent with Mr. Pritt's clinical picture, as occupational asthma from sensitization is a reversible obstruction.

Dr. Cervantes noted that Dr. Stoll pointed out that Mr. Pritt's spirometry following his removal from the workplace revealed normal findings with no evidence of bronchial reactivity and that Dr. Stoll had indicated that the air sampling showed multiple readings where MDI was present in the air but below recommended exposure levels. On that point, Dr. Cervantes opined that the ongoing presence of MDI still carried the risk of sensitization, and that there was ample evidence indicating that sensitization can still occur in workers exposed to lower levels of MDI over long periods of time. Dr. Cervantes stated that there was no evidence of a safe level of exposure in which sensitization cannot occur

3

and, moreover, once sensitization has occurred, sensitized workers are more likely to have symptoms with exposures below industry recommended standards. Based upon his medical experience and his clinical understanding of Mr. Pritt's condition as the treating physician, Dr. Cervantes opined that Mr. Pritt has mild, intermittent occupational asthma due to either MDI or formaldehyde sensitivity. Dr. Cervantes noted that there was objective evidence on spirometry that supports this diagnosis as well as objective pulmonary improvement with medical removal from the workplace. Dr. Cervantes further opined that Mr. Pritt has experienced twenty years of chronic, low-level exposure during his employment and that it is reasonable to conclude with a high degree of certainty that Mr. Pritt's symptoms are due to his employment with WC.

Roshan Hussain, M.D., authored a letter dated January 17, 2024, indicating that he has been Mr. Pritt's family physician since 2017. Dr. Hussain stated that during his most recent physical examination of Mr. Pritt on January 9, 2024, lung function was normal, and Mr. Pritt had reported no pulmonary complaints since being off work from WC. In reviewing Mr. Pritt's pulmonary function testing from July 2007 through April 2022, Dr. Hussain noted a gradual decline in Mr. Pritt's lung function, specifically an 8.3% decline in FVC and an 8% decline in FEV1. Dr. Hussain further noted that this gradual decline could not be attributed to asthma or smoking, as Mr. Pritt did not have a pre-existing pulmonary condition and had never smoked. In Dr. Hussain's opinion, Mr. Pritt's gradual decline in lung function could only be attributed to chronic exposure of the lungs to formaldehyde, MDI, and other air pollutants that were present in Mr. Pritt's work environment. Dr. Hussain noted that Dr. Cervantes noted a gradual improvement in Mr. Pritt's pulmonary function testing and peak flow meter readings after Mr. Pritt was taken off work in May 2023. Dr. Hussain opined that these findings indicated that Mr. Pritt's bronchial hypersensitivity was reversible when he was not exposed to air pollutants in the workplace. Dr. Hussain noted the negative RAST testing, but opined that the results were not surprising given the testing was completed months after Mr. Pritt was placed in a new work environment that did not involve exposure to air pollutants.

On August 8, 2024, the Board reversed the claim administrator's order rejecting the claim. The Board found that Mr. Pritt has shown by a preponderance of evidence that he developed occupational asthma as a direct result of his occupational exposure to MDI and/or formaldehyde while working for WC. WC now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the

4

petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

WC argues that the Board failed to appropriately weigh the evidence and erred in declaring Dr. Stoll's opinion to be unpersuasive. WC also asserts that the Board failed to adequately address the standard for an occupational disease claim. WC further argues that Mr. Pritt failed to establish that he has occupational asthma or that he meets the standard to establish an occupational disease claim. Finally, WC argues that both Drs. Hussain and Cervantes were inconsistent and ignored the negative pulmonary testing, and that Dr. Hussain opined that Mr. Pritt did not have asthma.

Pursuant to West Virginia Code § 23-4-1(f) (2024),

a disease is considered to have been incurred in the course of or to have resulted from employment only if it is apparent to the rational mind, upon consideration of all circumstances: (1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of an employer and employee; and (6) that it must appear to have had its origin in the risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction[.]

Here, the Board determined that Mr. Pritt established, by a preponderance of the evidence, that he developed occupational asthma as a direct result of his occupational exposure to MDI and/or formaldehyde while working for WC. The Board further found

5

that the opinion of Dr. Cervantes was "corroborated and supported by the medical findings of Dr. Hussain" and thus they were found to be more persuasive than the opinion of Dr. Stoll. Further, the Board found that Drs. Cervantes and Hussain's medical opinions are informed by clinical findings and diagnostic data obtained during the course of their long-term treatment relationship with Mr. Pritt, unlike Dr. Stoll, who evaluated Mr. Pritt on a single occasion for the purpose of an independent medical evaluation.

The Board noted that WC's airborne sampling data only proves that the levels of airborne MDI and formaldehyde were below the permissible exposure limits on a single day in May 2022, however, it found that the record contained no credible evidence to refute Mr. Pritt's assertions of occupational exposure to MDI/formaldehyde on July 20, 2020, July 21, 2020, and other occasions.

As to the six factors required to establish an occupational disease claim, the Board found that the medical evidence and the findings of Drs. Cervantes and Hussain establish: 1) a direct causal connection between Mr. Pritt's work and his diagnosis of occupational asthma; 2) that Mr. Pritt's asthma followed as a natural incident of his work and was the result of his exposure to MDI and formaldehyde in the workplace; 3) that the exposure can be fairly traced to Mr. Pritt's employment as the proximate cause; 4) that Mr. Pritt's exposure to airborne MDI and formaldehyde was an occupational hazard unique to his employment at WC and not a risk equally shared by the general public; 5) that Mr. Pritt's exposures to MDI and formaldehyde were incidental to WC's work in manufacturing OSB; and 6) that Mr. Pritt's diagnosis of occupational asthma was a natural consequence of a risk connected with his employment.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Pritt established that he developed occupational asthma as a direct result of his occupational exposure to MDI and/ or formaldehyde while working for WC. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order rejecting the claim.

Further, we will defer to the Board's credibility determinations. *See Martin v. Randolph Cnty Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . .").

We find no merit in WC's arguments that the Board incorrectly weighed the evidence and insufficiently analyzed the claim. The essence of WC's disagreement with the Board's decision is the reasoning used by the Board to weigh the medical evidence and determine which doctor was more persuasive. Contrary to WC's assertions, we do not find that the Board deemed Dr. Stoll's opinion to be unpersuasive merely because he did not agree with Drs. Cervantes and Hussain, nor do we find that the Board gave more weight to the opinions of Drs. Cervantes and Hussain merely because they had treated Mr. Pritt. Instead, the Board looked at the evidence as a whole and determined that the record better supported the opinions of Drs. Cervantes and Hussain than that of Dr. Stoll.

While the Board could have done a more in-depth analysis after applying its findings of facts to the six factors, we conclude that the analysis is sufficient in this claim.[6] However, we note that WC's arguments relied heavily on its opinion that the Board disregarded Dr. Stoll's report because it "disagreed" with Dr. Stoll's findings. WC has offered no evidence refuting Mr. Pritt's reports of exposure or symptoms following exposure. Further, neither WC nor Dr. Stoll offered any reliable evidence of other factors that could have caused Mr. Pritt's symptoms. Thus, WC's arguments against the findings of the Board and, further the findings of the physicians, seem to be based primarily on the fact that WC simply disagrees with them. We conclude that WC's simple disagreement with the Board's findings does not create reversible error.

Although WC attempts to invalidate the findings of Drs. Cervantes and Hussain, both physicians noted the testing was as to be expected and was consistent with Mr. Pritt's exposure to MDI and formaldehyde. Further, Dr. Hussain stated that Mr. Pritt developed "bronchial hypersensitivity to formaldehyde, the isocyanates, and other air pollutants at his workplace over the past 23 years [that] has directly resulted [in] Mr. Pritt['s] predisposition to any and all environmental irritants indefinitely." While this may not be a direct diagnosis of occupational asthma, Dr. Hussain's findings are substantially similar to Dr. Cervantes' diagnosis of occupational asthma. Furthermore, Dr. Hussain specifically stated that Mr. Pritt was encouraged to seek immediate medical care upon any re-exposure to air pollutants to prevent an exacerbation of his **asthma**.

Accordingly, we affirm the Board's August 8, 2024, order.

Affirmed.

---

[6] WC cited *Primecare Med. of W. Va., Inc. v. Foster*, 247 W.Va. 590, 885 S.E.2d 171 (W. Va. Ct. App. Mar. 6, 2023), to support the argument that the Board failed to sufficiently discuss the six factors under W. Va. Code § 23-4-1(f). However, we find that this claim can be distinguished from *Primecare* due to lack of evidence that any other diagnosis or nonoccupational factors could have caused Mr. Pritt's symptoms.

7

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White